IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| EVELYN MELÉNDEZ MELÉNDEZ et al.,<br><br>Plaintiff,<br><br>v.<br><br>AGENCIA ESTATAL PARA EL MANEJO<br>DE EMERGENCIAS Y ADMINISTRACIÓN<br>DE DESASTRES (AEMEAD) et al.,<br><br>Defendants. | CIVIL NO.: 06-2067 (ADC) |

**SEALED REPORT AND RECOMMENDATION**

**I.  Procedural Posture**

On April 15, 2009, a settlement agreement was entered between plaintiffs Evelyn Meléndez Meléndez ("Meléndez"), Frankie Olmeda Soto ("Olmeda"), the Conjugal Partnership constituted by Olmeda and Meléndez, and defendants Agencia Estatal para el Manejo de Emergencias y Administración de Desastres ("AEMEAD") and Nazario Lugo Burgos to resolve all of plaintiffs' claims against all the defendants in the case at bar. Docket Entry 71. In its fifth paragraph, the settlement agreement contains the following provision:

> Defendant shall perform a merit evaluation of the plaintiffs' position and her duties at the Agency in the term of thirty days since the notification of judgment. If as a result of said evaluation it is determined that the Plaintiff shall be promoted or her wage raised, it will be done by the Agency according to the applicable laws and regulations.

Id. at ¶5 ("fifth clause"). The following day, the settlement agreement was approved by the court and judgment was entered accordingly dismissing the case with prejudice. Docket Entries 72 and 73.

1

On May 9, 2011, that is more than two years after judgment had been entered, plaintiffs filed a motion alleging that AEMEAD had failed to evaluate Meléndez within thirty days of the notification of judgment pursuant the fifth clause of the settlement agreement. Docket Entry 85. In particular, plaintiffs claim that Meléndez has attempted unsuccessfully to have AEMEAD evaluate her and that she has remained on a temporary assignment status ("destaque"), not being able to avail herself of the employment benefits which she is entitled to. Id. at ¶1.[1]

In response to said motion and to an order to show cause issued by the court, defendants presented a motion arguing that in compliance with the settlement agreement Meléndez's merit evaluation was performed on April 29, 2009 and that Meléndez even signed said evaluation. Docket Entries 90 at ¶5; 90-1; and 96-1 (certified translation of evaluation).[2] Furthermore, defendants also take issue with the allegations regarding lack of communication between the parties. According to defendants, on February 28, 2011 Meléndez was informed as follows: "Your personnel record does not contain any legal document pending processing regarding a personnel action that could change your status as an employee of the agency or that entails a change in your classification, position, job description, evaluations, or salary." Docket Entry 96-3. See also Docket Entries 90 at ¶7; 90-3. Finally, defendants claim that it was Meléndez who actually requested her administrative or special

---

[1] In their motion, plaintiffs also make reference to the following clause of the settlement agreement: "If any party violates the terms, conditions, covenants, representations and/or warranties made herein it will be subject to all legal remedies applicable including breach of contract, interests, costs and attorneys fees." Docket Entry 71 at ¶23.

[2] Defendants also submit a letter dated April 21, 2009 signed by legal advisor Ada García Medina asking to submit as soon as possible all the necessary documents to be able to evaluate Meléndez. Docket Entries 90-2 and 96-2.

assignment ("destaque"), that she agreed to it, and that the assignment did not constitute any reduction in pay or benefits. Docket Entry 90 at ¶8.[3]

On May 19, 2011, plaintiffs replied reaffirming the lack of compliance with the fifth clause because the evaluation conducted was only with respect to Meléndez's special or administrative assignment, no meeting ever took place between Meléndez, José D. Echevarría and counsel Ada García Medina to discuss the "evolution of her position", and there was no documentation regarding reclassification of Meléndez's position. Docket Entry 95.

## II.    Evidentiary Hearing

A hearing was held regarding the matters discussed above during which the testimonies of Meléndez and AEMEAD's Human Resources Director Ileana Z. Reyes Lora ("Reyes") were heard. Docket Entry 99. The following evidence was obtained during the hearing.

Meléndez has worked for AEMEAD since March 2000. Currently she works as Office Technician I in the Operations Division of Central Office of AEMEAD, where she was has worked since May 7, 2009. Her duties in that Division encompass: receiving correspondence from eleven regional offices; preparing requisitions for the regional offices in PR; receiving messages; processing documents for the eleven regional offices; preparing documentation related to travel outside of Puerto Rico; and other duties that may arise due to the fact that she is part of the staff in charge of the emergency operations center, such as preparing damages report of all the agencies represented

---

[3]The letter dated January 13, 2009 – that is prior to the execution of the settlement agreement – submitted in support of this contention indicates that Meléndez will be through administrative assignment in the Press Office of the agency. The letter also clarifies that said administrative assignment does not represent any change in Meléndez status as a regular career employee or in her monthly salary. Docket Entries 90-4 and 97-1. The letter appears signed by Meléndez with a box marked that states "I accept". Id. The letter, however, does not clarify whether Meléndez requested said position in the first place.

in the operations center and sending them to the Executive Director, Agencies, and Office of the Governor.

On April 21, 2009, that is less than a week after the settlement agreement had been signed and judgment entered, Meléndez personally delivered a letter to the Executive Director Heriberto M. Saurí regarding the fifth clause, but she did not receive any immediate response. On April 29, 2009, however, Meléndez signed and initialed a "Job Performance Evaluation" for the position of Office Systems Technician I. Ex. A.[4] This evaluation also contains the signature of her supervisor in the division where Meléndez worked. Id. This evaluation includes factors such as mastery of Meléndez's duties and responsibilities, ability to learn, capacity to understand and follow instructions, quality of her performance, productivity, willingness to collaborate, initiative, observance of the rules of conduct, interpersonal relationships, attendance, punctuality, organizational skills, and ability to develop work plans. Id. Meléndez received in each of the pertinent factors a rating of either "excellent" or "superior", with the exception of her situation regarding lack of punctuality which was deemed "unsatisfactory". Id. Nowhere in the evaluation does it say that Meléndez is entitled to a promotion or a wage increase. Id. Meléndez discussed the evaluation with Press Division Director José Echevarría ("Echevarría"), yet she never requested a reconsideration of the evaluation because she agreed with it and because it was related to her special assignment ("detaque") in the Operations Division.[5]

---

[4]The evaluation form contains the heading of "Commonwealth of Puerto Rico / State Emergency and Disaster Management Agency."

[5]Meléndez was inconsistent in her testimony as to her reaction to the evaluation. Although at one point in she claimed that she objected to Echevarría the issue of her tardiness, at another point in time of her testimony she acknowledged her agreement with the evaluation. In any event, Human Resources Director Ileana Reyes testified that an employee is free to refuse to sign the evaluation form if she does not agree with it. Reyes added, however, that by signing the form the employee is indicating that she is in agreement with the evaluation. If an employee is not satisfied with the evaluation, she can send a letter addressed to her supervisor, the Human Resources Department, or the

In February 2011, however, Meléndez sent an e-mail to AEMEAD's Human Resources Director Reyes asking for compliance with the fifth clause of the settlement agreement. In response, Meléndez received a letter indicating that nothing was pending regarding the case that had been settled and that any concerns regarding said matter should be brought to the attention of her attorney or attorneys from the Puerto Rico Justice Department.[6]

On March 1, 2011, Meléndez sent another e-mail to Reyes stating that "you told me to remind you to send you the proper documents for my reclassification be fill out." Ex. B; Docket Entry 103-1. The following day, yet another e-mail was sent by Meléndez to Reyes with the following subject: "Follow-Up to Compliance with Federal Agreement." In its pertinent part, this third e-mail reads: "You had indicated to me last week that you had to send the documents of the evaluation to Mr. Mauricio Rivera [Meléndez's supervisor and Operations Director] and that by Monday you would do so. Knowing your many matters you handle, I please write to you to obtain them." Ex. C; Docket Entry 103-2. Reyes replied by e-mail on March 4, 2011 as follows: "I did not talk to you about a reclassification of position. I talked about an evaluation right after your temporary duty assignment to operations, and that when Mauricio came back from his training, (he

---

appointing authority. If the employee is not satisfied with the determination, then the employee can commence a grievance proceeding before the union that represents her. If no agreement is reached with the union and employee, then the employee has thirty days to appeal the agency's decision before the Public Service Appeals Commission. There is no evidence on the record of Meléndez having sent a letter objecting the substance of the evaluation, seeking grievance proceedings, or appealing the agency's decision.

[6]Printouts or copies of the February 2011 email and letter were not introduced into evidence at the evidentiary hearing. Among the supporting documentation contained in the motions filed by the parties, however, there is a letter dated February 28, 2011 addressed to Meléndez that reads in part as follows: "I am responding to your email entitled FOLLOW-UP TO FULFILLMENT OF FEDERAL AGREEMENT, dated March 2, 2011. On the recommendation of Ada García Medina, Esq., a legal adviser of our agency, I am instructing you that any communication related to the case terminated by confidential stipulation between the parties and its effects be discussed in writing and through your legal representatives directly with Héctor Mármol, Esq., from the Department of Justice, and/or Ada García, Esq... Your personnel record does not contain any legal document pending processing regarding a personnel action that could change your status as an employee of the agency or that entails a change in your classification, position, job description, evaluations, or salary." Docket Entry 90-3 and 96-3 (emphasis in original).

arrived last Tuesday, March 1, 2011, during afternoon hours), I would talk to him on the matter of your evaluation. I shall again go back to this subject as soon as possible and shall inform you of the result." Id. A few months afterwards, plaintiff proceeded to file the motion presently pending before the court.

**III. Analysis**

As previously stated, plaintiff contends that defendants have failed to comply with the fifth clause of the settlement agreement. The analysis to ascertain whether plaintiff's allegations have merit begins with certain facts that are not in controversy. A settlement agreement was entered between the parties on April 15, 2009. Docket Entry 71. The settlement agreement calls for a "merit evaluation of the plaintiffs' position and her duties" within thirty days since the notification of judgment. Id. Judgment was entered on April 16, 2009. Docket Entry 73. Less than two weeks after judgment was entered, Meléndez had a Job Performance Evaluation. Ex. A. It is undisputed that the evaluation took place, that she signed it, and that she discussed it with her supervisor Echevarría. No formal grievance procedure or appeal of that evaluation took place. Thus, at first glance it appears that plaintiff's contentions of lack of compliance with the fifth clause of the settlement agreement are untenable. A closer look to plaintiff's arguments, however, is warranted.

It is undisputed that in April of 2009, plaintiff was in a special or administrative assignment ("destaque"). Therefore, when the settlement agreement was executed, the judgment entered, and the job performance evaluation carried out, Meléndez's status was under special or administrative assignment. Meléndez contends that the settlement agreement requires defendants to evaluate her in the position that she had before being placed under the special or administrative assignment. There are several problems, however, with plaintiff's reasoning. First, the fifth clause of the

6

settlement agreement does not specify that the evaluation of Meléndez's position and duties refer not to her current ones or those that she had at the time of the settlement agreement, but rather to those prior to the initiation of her special or administrative assignment. Second, despite her special or administrative assignment, Meléndez's position has not changed during the relevant period of time: In October 16, 2002 she was an Office Systems Technician I (see Ex. D), in January 28, 2009 she was an Office Systems Technician I (see Ex. E), and on May 27, 2011, when the evidentiary hearing was held, she was an Office Systems Technician I at AEMEAD. Although a comparison of Meléndez's job descriptions in 2002 and 2009 are not absolutely identical, there are substantial similarities between the two. For instance, both job descriptions assign the following tasks to the position of Office Systems Technician I: handling daily correspondence, maintaining active and inactive files by fiscal year, preparing and filing transmittal sheets, receiving and welcoming the public, drafting letters and other documents using a computer, and preparing office supply requisitions, among others. Ex. D and E. According to Reyes' testimony at the evidentiary hearing, the duties in for the Office Systems Technician I in both of Meléndez's job descriptions are "essentially the same" because they boil down to secretarial work. The main difference, Reyes explained, is that back in 2002 when Meléndez was in Guayama she had to turn on the switchboard in the mornings. At the evidentiary hearing, even Meléndez's own recount of her duties revealed substantial – though not complete – overlap with her pre-administrative assignment job description: receiving correspondence from eleven regional offices; preparing requisitions for the regional offices in PR; receiving messages; processing documents for the eleven regional offices. Therefore, it is difficult to fathom how can a job performance evaluation of Meléndez's duties prior to her special assignment ("destaque") would have been any different than after said assignment, as in either

scenario the duties would have been essentially the same for the same position of Office Systems Technician I.

A wrinkle in this analysis is a possible distinction between the evaluation of plaintiff's duties, as opposed to her position. According to Reyes, who testified at the evidentiary hearing, there is no such thing as a "merit evaluation" as the fifth clause of the settlement agreement stipulates. Furthermore, Reyes explained, evaluations and reclassifications are two separate and distinct concepts. An immediate supervisor can recommend to the AEMEAD's Human Resources Department to proceed with a reclassification because a particular position has evolved or a performance evaluation has been outstanding. The April 29, 2009 evaluation of Meléndez's duties, though good in many respects, could possibly not be viewed as excellent due to plaintiffs' repeated tardiness. Ex. A. Nevertheless, a more subtle question, perhaps, is whether plaintiff's position as an Office Systems Technician I has evolved since 2002 to the present. Arguably, even if it is uncontested that pursuant to the fifth clause of the settlement agreement Meléndez's *duties* were evaluated in a timely manner, her *position* still needed to be evaluated for reclassification purposes.

On April 21, 2009, that is just eight days before Meléndez's Job Performance Evaluation, AEMEAD's legal advisor Ada García Medina sent a letter to Emanuel Cantres Carmona (back then head of Human Resources at AEMEAD) stating the following in its pertinent part: "To fulfill the agreements reached with ... [Evelyn Meléndez Meléndez] and as a matter of law, please prepare all the necessary documents to evaluate her as soon as possible, *in addition to the reclassification forms to analyze the evolution of the position*." (Emphasis added). Docket Entries 90-2 and 96-2.[7] Reyes

---

[7]This document was tendered by defendants in support of their motions regarding this issue and used by plaintiff during the evidentiary hearing. The document, however, was not formally offered into evidence during the hearing, although the same was discussed by Reyes during her testimony.

8

testified that she believed that legal advisor Ada García Medina's request for reclassification forms was a mistake because no such forms exist. Instead, only two forms exist at AEMEAD: Job Descriptions and Performance Evaluations. Therefore, no reclassifications forms would be found at Meléndez's personnel file despite the Job Performance Evaluation on April 29, 2009.

Still, even if we were to assume *arguendo* that reclassification forms do exist, Meléndez's allegations to the effect that defendants have breached the settlement agreement do not hold water. Plaintiff's settlement agreement was executed on April 15, 2009, that is a little over a month after the Commonwealth of Puerto Rico's so-called "Law 7" became effective on March 9, 2009. 3 L.P.R.A. §8802. This statute which imposed spending cutback measures provides in its pertinent part as follows:

> With the beginning of Phase III, every clause, precept and/or provision contained in any ... agreement ... is hereby temporarily suspended ... [for two years]... with respect to: (1) raises in salary ...; (11) raises for meritorious services; (12) general raises...; (15) promotions, demotions and/or transfers....

Id. Even though the fifth clause of Meléndez's settlement agreement provides for the possibility of a promotion or a wage raise, said provision clarifies that "it will be done by the Agency according to the applicable laws and regulations." Unfortunately for plaintiff, Law 7 was part of the applicable laws and regulations between March 9, 2009 and March 9, 2011. Therefore, AEMEAD cannot be held responsible for not determining within thirty days of judgment been entered and notified on April 16, 2009 whether Meléndez's position had evolved sufficiently to deserve a reclassification, since ultimately, regardless of what such analysis would have yielded, in the end no raises, promotions, demotions or transfers would have been allowed under Law 7's purview.

Meléndez's emails during the months of February and March, 2011, to Reyes appear to be an attempt to obtain a reclassification assessment from AEMEAD taking into account the two-year suspension term of Law 7. Although it is unclear whether as a matter of ordinary course of business such assessment is due, it cannot be intertwined with the settlement agreement in this case. The fifth clause of the settlement agreement clearly alludes to a "merit evaluation of the plaintiff's position and her duties at the Agency in the term of thirty days since the notification of judgment", not two years after notification of judgment. Hence, unsurprisingly, when Reyes reviewed Meléndez's personnel file in February of 2011, she found nothing pending with respect to this case. Within the parameters allowed by Law 7, plaintiff's performance of her duties was evaluated within the thirty-day period allotted by the settlement agreement. Her position as an Office Systems Technician I was not evaluated in terms of whether it had evolved sufficiently for purposes of a reclassification, but any such effort would have been rendered ultimately an academic exercise due to Law 7's temporary suspension of all kinds of wage raises, promotions, demotions, and transfers.

WHEREFORE, for the reasons stated above, it is respectfully recommended that plaintiffs' motion requesting a finding that the settlement agreement has been breached and for relief including but not limited to costs and attorney's fees be DENIED.

IT IS SO RECOMMENDED.

The parties have 14 days to file any objections to this report and recommendation. Failure to file the same within the specified time waives the right to appeal this report and recommendation.

In San Juan, Puerto Rico, this 6th day of March, 2012.

                                                            s/Marcos E. López
                                                            U.S. Magistrate Judge